UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| WILLIAM KLOPP, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>KENTUCKY EDUCATION )<br>PROFESSIONAL STANDARDS BOARD, )<br>*et al.*, )<br>  Defendants. ) | Civil No. 3:23-cv-00036-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

From this country's inception, federal courts have been strongly discouraged from interfering with state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43 (1971). This case is no exception. William Klopp is a public-school teacher embroiled in a disciplinary action initiated by the Kentucky Education Professional Standards Board. Mr. Klopp asks this Court to enjoin the Board's actions on federal Constitutional grounds. Because Mr. Klopp seeks federal interference with a pending state judicial proceeding, this Court **ABSTAINS**.

**I**

William Klopp is an elementary school teacher in Florence, Kentucky.[1] [R. 1 at 4.] While instructing his class, Mr. Klopp noticed a male pupil attempting to sit in a seat already occupied by another student. *Id.* at 6. Mr. Klopp directed both students to "get out of each other's Kool-Aid." *Id.* After this reproach, the encroaching pupil returned to his assigned seat. *Id.* But a few moments later, that student again created a disruption by kicking a female

---

[1] The facts recounted here are taken from Mr. Klopp's Complaint. [R. 1.]

classmate's chair, causing her to fall to the floor. *Id.* Mr. Klopp admonished the aggressing student that "boys do not hit or kick girls ever!" *Id.* He then directed the child to exit the classroom. *Id.* As he did so, "the student began to bolt towards the exit doors of the school." *Id.* "Fearing the student would run into the adjoining parking lot, Mr. Klopp put his hand on the student's shoulder and redirected him into the classroom." *Id.*

In response to this incident, the school district filed a formal complaint with the Kentucky Education Professional Standards Board. *Id.* The Board began investigating Mr. Klopp for embarrassing or disparaging a student in violation of his ethical obligations. *Id.* at 6–7. The investigation appears to encompass more than just the hand-on-shoulder incident. *Id.* at 7. In particular, the Board advised Mr. Klopp's attorneys that:

> The [] facts support that beyond a preponderance of the evidence Mr. Klopp embarrassed or disparaged a student with his commentary, he failed to protect the emotional wellbeing of students A and J when the students in the class began teasing them for being gay as a direct result of Mr. Klopp's commentary, and Mr. Klopp demonstrated a willful or careless disregard for the student's safety and when he used unnecessary physical force with student J.

*Id.*

On April 10, 2023, the Board conducted a meeting "without [giving Mr. Klopp] notice or the opportunity to be heard[.]" *Id.* at 8; [R. 1-5 at 1.] During the meeting, the Board decided to institute disciplinary measures against Mr. Klopp. [R. 1 at 8.] The Board proposed to him their "final offer," which consisted of a 15-day suspension, educator ethics training, and a 2-year probation. *Id.* If Mr. Klopp wished to accept the offer, the Board informed him, he would need to sign an agreed order by May 17, 2023. *Id.* If he failed to do so, the Board advised, "the Board would be instituting disciplinary action against [him.]" *Id.* Plaintiff Klopp filed this action in federal court on May 16, 2023, one day before his signing deadline. *Id.*

2

Mr. Klopp alleges that the Board and its members violated his rights under the United States Constitution. *Id.* at 9. He seeks injunctive relief, declaratory relief, attorney fees, and costs. *Id.* at 14. Now, the Board and its members move to dismiss this action for want of jurisdiction. [R. 6.]

## II

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may assert lack of subject-matter jurisdiction as a defense. In so doing, the defendant challenges the Court's power to hear the case before it. When the Court's jurisdiction is challenged in this way, the plaintiff bears the burden of demonstrating that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

First, the Board and its members argue that Mr. Klopp lacks standing. [R. 6.] Additionally, they assert Eleventh Amendment immunity from suit. *Id.*

The Court need not reach either issue because *Younger v. Harris* applies. 401 U.S. 37 (1971). *Younger* abstention "represents the sort of 'threshold question' [that] may be resolved before addressing jurisdiction." *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (internal citation omitted). Indeed, a court need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). The justification for this is straightforward: "'jurisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Id.* (quoting *Intec USA, LLC v. Engle*,

3

467 F.3d 1038, 1041 (7th Cir. 2006)). For the reasons that follow—without addressing the questions of standing or immunity—this Court abstains.[2]

### A

*Younger* abstention "is a judicial creation born from the principles of equity, comity, and federalism." *Hill*, 878 F.3d at 204 (citing *Younger*, 401 U.S. at 44). Consistent with these broad aims, *Younger* "permits federal courts to withhold authorized jurisdiction in certain circumstances to avoid undue interference with state court proceedings." *Id.*

Courts assessing *Younger*'s applicability first determine whether there is a state proceeding of the sort contemplated by *Younger*. *See Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017). *Younger* principles extend to "(1) ongoing state criminal prosecutions, (2) ongoing state-initiated civil enforcement proceedings 'that are akin to criminal prosecutions,' and (3) ongoing state civil proceedings that involve the ability of courts to perform judicial functions." *Drs. Hosp. of Augusta, L.L.C. v. Kentucky*, No. 6:17-CV-00206-GFVT, 2018 WL 1748112, at *3 (E.D. Ky. Apr. 11, 2018) (internal citation omitted). Critically, "state-initiated civil [enforcement] proceedings" include "administrative proceedings that are judicial in nature." *Id.*; *see also Doe*, 860 F.3d at 369 ("In proceedings akin to a criminal prosecution, 'a state actor is routinely a party to the state proceeding and often initiates the action,' and the procedure is initiated to sanction the federal plaintiff.") (internal citation omitted). This is true "even if the case has not yet progressed to state-court at the time of federal review." *Drs. Hosp. of Augusta, L.L.C.*, 2018 WL 1748112, at *3; *see also Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*,

---

[2] Federal courts asked to enjoin a pending state court action may consider *Younger* abstention *sua sponte*, even if neither party raises the issue. *See Hill v. Snyder*, 878 F.3d 193, 206 n.3 (6th Cir. 2017) ("[F]ederal courts may raise abstention *sua sponte*[.]").

477 U.S. 619, 627 (1986); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 576–77 (1973).

If the Court finds that a *Younger* proceeding is ongoing, it then considers the Supreme Court's *Middlesex* factors. *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432; *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013). *Middlesex* counsels against the exercise of federal jurisdiction when: (1) state proceedings are pending, (2) the proceedings implicate an important state interest, and (3) the state proceedings afford an adequate opportunity to raise constitutional issues. *Middlesex*, 457 U.S. at 432. When these factors are present, federal courts should abstain unless there are "exceptional circumstances[.]" *Id.* at 437.

**B**

Abstention is appropriate here. First, the Court finds an ongoing proceeding of the sort contemplated by *Younger*. Mr. Klopp's proceeding is a state initiated civil enforcement proceeding akin to a criminal prosecution. *See Jacobs*, 571 U.S. at 79 ("In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action."). As Mr. Klopp points out in his Complaint, "[t]he Board, pursuant to Kentucky Revised Statute 161.028, has the power to issue, renew, suspend, and revoke licensing certificates for professional school personnel throughout the Commonwealth of Kentucky." [R. 1 at 6.] Accordingly, the Board initiates investigations, proceedings, and hearings for the purpose of determining whether to revoke or suspend a teaching license. [R. 1-3 at 10 ("The [Board] must initiate a due process hearing before sanctions are imposed upon an educator's certificate, unless sanctions are agreed to by the parties."); *see also id.* ("The administrative hearing shall be conducted in conformance with the provisions of KRS Chapter 13B."); Ky. Rev. Stat. Ann. § 13B (West 2024) (setting procedural requirements for administrative hearings in Kentucky). "All Final Orders [of the

5

Board] are appealable to Franklin Circuit Court[.]" [R. 1-3 at 13]; § 13B.140 (providing for judicial review of administrative hearings); Ky. Rev. Stat. Ann. § 161.120(12) (West 2024) (explaining that Final Orders of the Board may be appealed to Circuit Court). Administrative hearing testimony is given under oath. § 13B.090. Certain evidentiary rules apply, and the Board bears the burden of proof. [R. 1-3 at 11]; § 13B.090. If the case goes to a hearing, Mr. Klopp can call witnesses, be represented by counsel, cross-examine the Board's witnesses, and present evidence. § 13B.080. Based on this procedural framework, Mr. Klopp's administrative process suffices as an adjudicative proceeding of the sort embraced by *Younger*. *See Doe*, 860 F.3d at 370 ("[Plaintiff] can call witnesses, have an attorney present, submit questions for cross-examination, and present evidence. Although the hearing failed to include every element of due process in a criminal prosecution, it is still adjudicative in nature."); *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432–34 (state bar disciplinary proceedings constitute an "ongoing state judicial proceeding"); *see also id.* (analyzing state statutes to determine whether the state bar's disciplinary proceedings were "judicial in nature").

1

Having answered this threshold question in the affirmative, the Court next considers the *Middlesex* factors. The first factor counsels in favor of abstention because a proceeding is pending.

"*Younger* is inextricably bound up with beginnings." *Hill*, 878 F.3d at 205. Indeed, "[t]he first condition for the application of *Younger* abstention is that the state proceeding must be pending on the day the plaintiff sues in federal court—the so-called 'day-of-filing' rule." *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013) (internal citation

omitted). "For *Younger* abstention purposes, state law controls the determination of when the state proceedings began." *James v. Hampton*, 513 F. App'x 471, 474 (6th Cir. 2013).

Thus, a review of Kentucky law is instructive. The Board's process is as follows: first, the school superintendent files with the Board a written report or complaint detailing the educator's misconduct. § 161.120(2)(a). The Board then provides the allegedly offending educator with a copy of the complaint. § 161.120(2)(d). The educator has the right to file a written rebuttal with the Board. § 161.120(2)(d); [R. 1-3 at 4.] The Board determines whether it finds "sufficient credible evidence" that the educator may have committed a violation. [R. 1-3 at 3.] "If the report or complaint contains sufficient credible evidence that a violation [] may have occurred, staff will open a case file and assign that file a number." *Id.* at 4. The Board reviews the complaints during a closed meeting. *Id.* at 5–6. "The [Board] may take action upon confirmation that a quorum exists." *Id.* at 7. That action includes, *inter alia*, proceeding to a hearing or referring the matter to an attorney for review and investigation. *Id.* at 7–10. But any action taken must be agreed upon by a majority vote. *Id.* at 7. At any time during the process, the Board can "enter into an agreed order" with the educator to resolve the action. § 161.120(8).

Here, the Superintendent filed a complaint with the Board. [R. 1 at 6.]. The Board provided notice to Mr. Klopp. *Id.* at 7. The Board reviewed the complaint and found sufficient evidence of a violation. *Id.* Accordingly, it opened a case file and assigned the case file a number. [R. 1-5 at 1.] The Board reviewed the matter at its closed meeting in April 2023. *Id.* Finding evidence of a violation, the Board referred the matter to its attorney. *Id.* The attorney then offered Mr. Klopp the Board's "final offer," consisting of suspension, probation, and training. *Id.*

This degree of progression is sufficient to render the proceeding "pending" within the parameters of *Younger*. The Board's procedures indicate that a complaint triggers the beginning of the disciplinary process. Moreover, it stands to reason that a disciplinary proceeding commences when a complaint is filed. Although the Court is unable to find a Kentucky Supreme Court decision on point, this notion accords with the wisdom of the Sixth Circuit and other federal district courts. *See O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (analyzing Ohio law); *Ziel v. Romeo Cmty. Schs.*, No. 21-11929, 2021 WL 4125326, at *3 (E.D. Mich. Sept. 9, 2021) (Michigan's teacher disciplinary process commences when a formal "charge" is filed with the Board). Because the Superintendent filed a complaint with the Board before Mr. Klopp filed his federal action, the administrative proceeding is "pending" for *Younger* purposes.

But even assuming a superintendent's complaint does not commence an action, an action surely begins when the Board opens a case file and assigns the case a number. That has also occurred here. Accordingly, the Court finds that the disciplinary proceeding was pending within the meaning of *Younger* when Mr. Klopp filed his federal Complaint. *See Moncier v. Jones*, 803 F. Supp. 2d 815, 833 (E.D. Tenn. 2011) ("If the state proceeding was pending at the time of the filing, then the matter is "ongoing" for purposes of *Younger* abstention."); *Cf. Hicks v. Miranda*, 422 U.S. 332, 349 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."). Accordingly, the first *Middlesex* factor militates in favor of abstention.

### 2

Same result under the second factor. The administrative proceeding implicates important state interests. Mr. Klopp challenges the constitutionality of, *inter alia*, a Kentucky regulation

8

that sets minimal standards for Kentucky public-school teachers.  In particular, the regulation prohibits "subjecting students to embarrassment or disparagement." [R. 1 at 12 (citing 16 Ky. Admin. Reg. 1:020(3)(a) (Feb. 2024))].  Kentucky has a strong interest in the standards of conduct applied to its schoolteachers.  And whether that particular regulation falls short of Constitutional requirements is a question of import to the state of Kentucky.  Accordingly, the first two *Middlesex* factors counsel against the exercise of federal jurisdiction.

### 3

As does the third.  Mr. Klopp has adequate opportunity to challenge the proceeding on Constitutional grounds.  All Final Orders by the Board are susceptible to judicial review in Franklin Circuit Court.  [R. 1-3 at 13 (citing Ky. Rev. Stat. Ann. § 13B (West 2024); Ky. Rev. Stat. § 161.120(12) (West 2024))].  And Mr. Klopp does not provide any authority to indicate that the Circuit Court could not hear his Constitutional challenge.  Thus, "it appears that [Mr. Klopp] will be provided a full and fair opportunity to litigate his constitutional claims in the course of the state proceedings." *Watts v. Burkhart*, 854 F.2d 839, 847–48 (6th Cir. 1988).  Even assuming he does not have to opportunity to raise his Constitutional claims in the administrative proceeding, "[t]his fact alone does not [] establish that [Mr. Klopp] will be deprived of an opportunity to present his [C]onstitutional claims." *Id.* at 848.  Indeed, "it is sufficient . . . that [C]onstitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton Christian Schs., Inc.*, 477 U.S. at 629; *see also Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431 ("Minimal respect for the state processes [] precludes any *presumption* that the state courts will not safeguard federal [C]onstitutional rights.") (emphasis in original).

The *Middlesex* analysis therefore militates in favor of *Younger* abstention.  Mr. Klopp resists this conclusion, arguing that the proceeding has not begun since the Board has not filed

9

formal charges or issued a revocation. [R. 7 at 8.] But this argument is a bit too granular. *Younger* principles can still apply even before a formal revocation hearing takes place. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial.").[3]

Having found that *Younger* applies, the Court will abstain from exercising jurisdiction over this action.

### III

Because this action embraces a state proceeding of the type contemplated by *Younger*, it is hereby **ORDERED** as follows:

1. The Court **ABSTAINS;** and

2. This action is **DISMISSED WITHOUT PREJUDICE**[4] and **STRICKEN** from the Court's active docket.

This the 17th day of March, 2024.

Gregory F. Van Tatenhove
United States District Judge

---

[3] Indeed, Mr. Klopp argues his due process rights were violated when the Board decided to "institute disciplinary measures" against him "without notice or the opportunity to be heard." [R. 1 at 8.] For Mr. Klopp, this argument proves too much. It is unclear how a procedural due process violation could have occurred when no proceeding existed.

[4] Because Mr. Klopp seeks equitable relief, and not monetary damages, a dismissal without prejudice (as opposed to a stay) is the appropriate disposition. *See Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075–76 (6th Cir. 1998); *Louisville Country Club v. Ky. Comm'n on Hum. Rts.*, 221 F.3d 1335 (6th Cir. 2000) (Table); *James v. Hampton*, 513 F. App'x 471, 477 (6th Cir. 2013).