UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| WILLIAM KLOPP, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:23-cv-00036-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KENTUCKY EDUCATION | ) | **&** |
| PROFESSIONAL STANDARDS BOARD, | ) | **ORDER** |
| *et al.*, | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Mr. Klopp is an elementary school teacher facing a disciplinary action initiated by the Kentucky Education Professional Standards Board. This Court previously abstained from hearing his lawsuit pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). *See Klopp v. Ky. Educ. Pro. Standards Bd.*, 724 F. Supp. 3d 682 (E.D. Ky. 2024). Now, Mr. Klopp asks the Court to reconsider. Because he fails to provide any reason for alteration under Rule 59(e), Mr. Klopp's Motion to Alter Judgment **[R. 11]** is **DENIED.**

**I**

William Klopp is an elementary school teacher in Florence, Kentucky.[1] [R. 1 at 4.] While instructing his class, Mr. Klopp noticed a male pupil attempting to sit in a seat already occupied by another student. *Id.* at 6. Mr. Klopp directed both students to "get out of each other's Kool-Aid." *Id.* After this reproach, the encroaching pupil returned to his assigned seat. *Id.* But a few moments later, that student again created a disruption by kicking a female

---

[1] For the sake of clarity and consistency, the facts recounted here are taken from the Court's prior Memorandum Opinion & Order at [R. 9.]

classmate's chair, causing her to fall to the floor. *Id.* Mr. Klopp admonished the aggressing student that "boys do not hit or kick girls ever!" *Id.* He then directed the child to exit the classroom. *Id.* As he did so, "the student began to bolt towards the exit doors of the school." *Id.* "Fearing the student would run into the adjoining parking lot, Mr. Klopp put his hand on the student's shoulder and redirected him into the classroom." *Id.*

In response to this incident, the school district filed a formal complaint with the Kentucky Education Professional Standards Board. *Id.* The Board began investigating Mr. Klopp for embarrassing or disparaging a student in violation of his ethical obligations. *Id.* at 6–7. The investigation appears to encompass more than just the hand-on-shoulder incident. *Id.* at 7. In particular, the Board advised Mr. Klopp's attorneys that:

> The [] facts support that beyond a preponderance of the evidence Mr. Klopp embarrassed or disparaged a student with his commentary, he failed to protect the emotional wellbeing of students A and J when the students in the class began teasing them for being gay as a direct result of Mr. Klopp's commentary, and Mr. Klopp demonstrated a willful or careless disregard for the student's safety and when he used unnecessary physical force with student J.

*Id.* On April 10, 2023, the Board conducted a meeting "without [giving Mr. Klopp] notice or the opportunity to be heard[.]" *Id.* at 8; [R. 1-5 at 1.] During the meeting, the Board decided to institute disciplinary measures against Mr. Klopp. [R. 1 at 8.] The Board proposed to him their "final offer," which consisted of a 15-day suspension, educator ethics training, and a 2-year probation. *Id.* If Mr. Klopp wished to accept the offer, the Board informed him, he would need to sign an agreed order by May 17, 2023. *Id.* If he failed to do so, the Board advised, "the Board would be instituting disciplinary action against [him.]" *Id.* Plaintiff Klopp filed this action in federal court on May 16, 2023, one day before his signing deadline. *Id.*

2

On March 19, 2024, this Court entered an Order abstaining pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). [R. 9.] Accordingly, it dismissed Klopp's action without prejudice and struck the action from the Court's docket. [R. 10.] Disappointed with the outcome, Mr. Klopp filed a Motion to Alter the Judgment. [R. 11.] Undergirding this request is his contention that no *Younger* proceeding was pending when he filed his federal complaint. *Id.* Further, he insists that this Court's prior Order occasioned a manifest injustice because his rights have been violated.[2] *Id.*

**II**

Rule 59(e) allows a litigant to file a motion to alter or amend a judgment of a district court where there has been a clear error of law, newly discovered evidence, an intervening change in the law, or to prevent manifest injustice. *See, e.g.*, *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A motion under Rule 59(e) is "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Further, a "'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citation omitted); *see also Dorger v. Allstate Ins. Co.*, No. CIV.A. 2:08-56-DCR, 2009 WL 2136268, at *2 (E.D. Ky. July 16, 2009) ("[F]or [a movant] to prevail on her Rule 59(e) motion based on 'manifest error of law' she must not only establish that errors were made, but that these errors were so egregious that an appellate court could not affirm the judgment."). Whether to

---

[2] In his reply brief, Klopp asserts for the first time that "newly discovered evidence" exists because he was formally charged on May 6, 2024. [R. 14.] However, "[a]n argument raised for the first time in a reply brief will not be considered by this Court." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see also Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (same). Even if the Court were to consider that argument, it is not persuasive.

3

grant or deny a Rule 59(e) motion is generally a matter within the district court's sound discretion. *See Engler*, 146 F.3d at 374.

### A

First, Mr. Klopp asserts that the Court's *Younger* analysis was corrupted by its erroneous conclusion that his disciplinary proceeding was "pending" or "ongoing." [R. 11.] He emphasizes that, at the time of filing, the Board had not yet scheduled a hearing or filed a formal charge against him. *Id.*

The Court has already considered that argument. As it noted in its prior Order, "[t]he first condition for the application of *Younger* abstention is that the state proceeding must be pending on the day the plaintiff sues in federal court—the so-called 'day-of-filing' rule." *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013) (internal citation omitted). [R. 9 at 6.] Because "state law controls the determination of when the state proceedings began[,]" the Court carefully considered the relevant statutory framework. *James v. Hampton*, 513 F. App'x 471, 474 (6th Cir. 2013). Upon review of Kentucky law, the Court reasoned as follows:

> Here, the Superintendent filed a complaint with the Board. [R. 1 at 6.] The Board provided notice to Mr. Klopp. *Id.* at 7. The Board reviewed the complaint and found sufficient evidence of a violation. *Id.* Accordingly, it opened a case file and assigned the case file a number. [R. 1-5 at 1.] The Board reviewed the matter at its closed meeting in April 2023. *Id.* Finding evidence of a violation, the Board referred the matter to its attorney. *Id.* The attorney then offered Mr. Klopp the Board's 'final offer,' consisting of suspension, probation, and training. *Id.* . . . The Board's procedures indicate that a complaint triggers the beginning of the disciplinary process. Moreover, it stands to reason that a disciplinary proceeding commences when a complaint is filed. . . . Because the Superintendent filed a complaint with the Board before Mr. Klopp filed his federal action, the administrative proceeding is 'pending' for *Younger* purposes. But even assuming a superintendent's complaint does not commence an action, an action surely begins when the Board opens a case file and assigns the case a number. That has also occurred here.

4

[R. 9 at 7–8.] Mr. Klopp takes issue with this analysis, relying on *Winter v. Wolnitzek* to support his conclusion that no proceeding was pending on his day of filing. 834 F.3d 681 (6th Cir. 2016). In *Winter*, sitting and aspiring Kentucky Judges received "probable cause letters" from the Judicial Conduct Commission in connection with their campaign speech. *Id.* at 686–67. The letters advised the Judges that they may have violated various Canons of Kentucky's Code of Judicial Conduct. *Id.* Unpersuaded by the Commission's request for abstention, the Sixth Circuit reasoned that "a finding of probable cause does not necessarily mean a formal proceeding exists." *Id.* at 688. "In the absence of an ongoing enforcement action," the Panel concluded, "*Younger* has no role to play, leaving us with authority, indeed an obligation, to resolve the case." *Id.*

Mr. Klopp's reliance on *Winter* is misplaced. First, he could have cited to *Winter* in the first instance. Second, *Winter* did not appear to involve the filing of a complaint. *Id.* Further, there was no suggestion in *Winter* that the Commission was formally investigating the plaintiffs. *Id.* Conversely, here, a complaint was filed with the Board. In accordance with its statutory procedures, the Board provided formal notice to Mr. Klopp. The Board then found sufficient evidence of a violation, opened a case file, referred the matter to its attorney, and prepared an agreed order for Klopp's review. That is a far cry from a probable cause letter.

Mr. Klopp fails to cite any additional authority in support of his request for reconsideration. This is perhaps unsurprising, given that relevant precedent cuts against him. *See Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 720–23 (6th Cir. 1993) (attorneys' disciplinary proceedings were "pending" following client's Bar complaint and Bar Association's preliminary finding of probable cause, even when the complaint had yet to be certified and a formal hearing had yet to occur); *Danner v. Bd. of Pro. Resp. of Tenn. Supreme Ct.*, 277 F. App'x

575, 579 (6th Cir. 2008) (State Bar disciplinary proceeding was "ongoing" when "[plaintiff] filed his federal suit nineteen days after receiving the notice of proposed discipline, which was one day prior to the deadline for requesting a full hearing on the misconduct charge"); *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (state forfeiture action was ongoing even though plaintiff filed her federal complaint four days before the state filed its forfeiture complaint (citing *Hicks v. Miranda*, 422 U.S. 332, 349 (1975))); *O'Neill v. Coughlan*, 511 F.3d 638, 643–44 (6th Cir. 2008) (Ohio judicial disciplinary proceeding began with the filing of a grievance, even though "a grievance is subject to investigation and independent review in order to 'separate the wheat from the chaff' before the filing of a formal complaint"); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial."); *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163–64 (10th Cir. 1999); *Alsager v. Bd. of Osteopathic Med. & Surgery*, 573 F. App'x 619, 620 (9th Cir. 2014).  Because Mr. Klopp fails to demonstrate an error in the Court's reasoning, the Court declines to alter its abstention decision.

**B**

Finally, Klopp asserts that manifest injustice has occurred because the Board is violating his due process rights. [R. 11 at 7–10.]  Moreover, he seeks judicial intervention to remedy an extant or impending Constitutional violation.  The Court considered and addressed this argument in its prior Order.  There, it explained:

> All Final Orders by the Board are susceptible to judicial review in Franklin Circuit Court. [R. 1-3 at 13 (citing Ky. Rev. Stat. Ann. § 13B (West 2024); Ky. Rev. Stat. § 161.120(12) (West 2024))].  And Mr. Klopp does not provide any authority to indicate that the Circuit Court could not hear his Constitutional challenge.  Thus, "it appears that [Mr. Klopp] will be provided a full and fair opportunity to litigate

6

his constitutional claims in the course of the state proceedings." *Watts v. Burkhart*, 854 F.2d 839, 847–48 (6th Cir. 1988). Even assuming he does not have to opportunity to raise his Constitutional claims in the administrative proceeding, "[t]his fact alone does not [] establish that [Mr. Klopp] will be deprived of an opportunity to present his [C]onstitutional claims." *Id.* at 848. Indeed, "it is sufficient . . . that [C]onstitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton Christian Schs., Inc.*, 477 U.S. at 629; *see also Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431 ("Minimal respect for the state processes [] precludes any *presumption* that the state courts will not safeguard federal [C]onstitutional rights.") (emphasis in original).

"A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Again, the Court will reject this argument.

### III

Mr. Klopp's mere disagreement with this Court's conclusion is insufficient to warrant relief. *Engler*, 146 F.3d at 374. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiff Klopp's Motion to Alter Judgment **[R. 11]** is **DENIED.**

This the 17th day of December, 2024.

Gregory F. Van Tatenhove
United States District Judge